1
2
3
4
5
6

**VEDDER PRICE (CA), LLP**
Sheryl L. Skibbe, Bar No. 199441
sskibbe@vedderprice.com
Ashley D. Stein, Bar No. 305094
astein@vedderprice.com
Lauren E. Wertheimer, Bar No. 327900
lwertheimer@vedderprice.com
1925 Century Park East, Suite 1900
Los Angeles, California 90067
T:  +1 424 204 7700
F:  +1 424 204 7702

7
8
9

Attorneys for Defendant
FOLLETT HIGHER EDUCATION
GROUP, LLC (formerly known as Follett
Higher Ed Group, Ltd.)

10
11
12

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

13
14
15
16
17
18
19
20

| | |
|---|---|
| AARICA BRITTANY, an individual, | Case No. |
| Plaintiff, | |
| vs. | **DEFENDANT FOLLETT HIGHER EDUCATION GROUP, LLC'S NOTICE OF REMOVAL AND REMOVAL OF CIVIL ACTION** |
| FOLLETT HIGHER EDUCATION GROUP, LLC; FOLLETT HIGHER ED GROUP, LTD; and DOES 1 through 20, inclusive, | |
| Defendants. | |

21
22
23
24
25
26
27
28

**TO THE CLERK OF THE ABOVE-CAPTIONED COURT AND TO PLAINTIFF AND HER COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Defendant Follett Higher Education Group, LLC (formerly known as Follett Higher Ed Group, Ltd.) ("Follett" or "Defendant") hereby removes this action from the Superior Court of the State of California for the County of Los Angeles  (the "Superior Court") to this Court pursuant to 28 U.S.C. §§ 1332(d), 1441 and 1446, based on the following:

## BACKGROUND

1.       On June 16, 2023, Plaintiff Aarica Brittany ("Plaintiff") filed a complaint in the Superior Court against Follett entitled *Aarica Brittany, individually and on behalf of all others similarly situated, Plaintiffs v. Follett Higher Education Group, LLC; Follett Higher Ed Group, Ltd; and DOES 1 through 20, inclusive, Defendants*, Case No. 23STCV13911 (the "State Court Action").  A copy of the complaint filed in the State Court Action (the "Complaint") is attached to the accompanying Declaration of Ashley D. Stein ("Stein Decl.") as Exhibit A.  The allegations in the Complaint are incorporated into this notice by reference without admitting the truth of any of them.  Plaintiff purports to bring the Complaint as a class action on her own behalf, as well as on behalf of all other persons similarly situated.  (*See* Complaint, ¶¶ 1, 18-23.)

2.       The Complaint asserts causes of action against all Defendants for: (1) failure to pay minimum wages; (2) failure to pay overtime wages; (3) failure to provide meal breaks; (4) failure to provide rest breaks; (5) failure to reimburse business expenses; (6) failure to provide accurate itemized wage statements; (7) failure to pay wages timely during employment; (8) failure to pay all wages due upon separation of employment; and (9) unfair business practices (violation of Business and Professions Code section 17200 *et seq*.).  (*See*, *generally*, Complaint.)

3.       The Complaint seeks to certify a class of "[a]ll California citizens

- 1 -

currently or formerly employed by Defendants as nonexempt employees in the State of California at any time between December 20, 2018 and the date of class certification." (*See* Complaint, ¶ 20.)

4.     Follett was served with the Summons and Complaint and accompanying documents on July 14, 2023.  The Summons and Complaint was served with an "Initial Status Conference Order" setting an Initial Status Conference for October 25, 2023.  True and correct copies of the documents served on Follett on July 14, 2023, including the:  (1) Summons; (2) Complaint and Demand for Jury Trial; (3) Civil Case Cover Sheet; (4) Notice of Assignment; (5) Los Angeles Superior Court First Amended General Order re: Mandatory Electronic Filing for Civil; (6) Initial Status Conference Order (Complex Class Actions); (7) June 29, 2023 Minute Order; and (8) Alternative Dispute Resolution (ADR) Information Package are attached to the Stein Decl. as Exhibit B.

5.     On or about July 18, 2023 and August 1, 2023, Plaintiff filed Proofs of service as to Follett and Follett Higher Ed Group, Ltd.  True and correct copies of the Proofs of Service filed by Plaintiff on or about July 18, 2023 and August 1, 2023 are attached to the Stein Decl. as Exhibit C.

6.     On August 10, 2023, Follett filed its Answer to the Complaint in the Superior Court of California.  A true and correct copy of the Answer is attached to the Stein Decl. as Exhibit D.  Follett has not filed any other pleadings or papers in this action prior to this Notice of Removal.

7.     The exhibits listed above constitute all prior pleadings, process, and orders filed with the court in this matter.

## **TIMELINESS OF REMOVAL**

8.     This Notice of Removal is timely as it is filed within thirty (30) days of the first receipt by Follett of a copy of the Summons and Complaint in this action. 28 U.S.C. § 1446(b).

**<u>ORIGINAL JURISDICTION – CLASS ACTION FAIRNESS ACT</u>**

9.     This Court has original jurisdiction of this action under the Class Action Fairness Act ("CAFA"), codified in pertinent part at 28 U.S.C. section 1332(d)(2).  As set forth below, this action is properly removable, pursuant to 28 U.S.C. section 1441(a), in that this Court has original jurisdiction over the action, because the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs, and the action is a class action in which at least one class member is a citizen of a state different from that of a defendant.  28 U.S.C. §§ 1332(d)(2) & (d)(6).  Furthermore, the number of putative class members is greater than 100.  28 U.S.C. § 332(d)(5)(B); (Kyroudis Decl., ¶¶ 11-12.)

**<u>*DIVERSITY OF CITIZENSHIP*</u>**

10.     Follett is informed and believes that Plaintiff is now, and was at the time the State Court Action was commenced, a citizen of the State of California within the meaning of 28 U.S.C. section 1332(a) because she is a resident of and domiciled in the State of California.  (Complaint, ¶ 10.)

11.      CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction; that is, at least one purported class member must be a citizen of a state different from any named defendant.  28 U.S.C. § 1332(d)(2)(A).  In the instant case, Plaintiff is a citizen of a state that is different from the state of citizenship of the Defendant.

12.     <u>Plaintiff's Citizenship</u>.  For purposes of determining diversity, a person is a "citizen" of the state in which he or she is domiciled.  *Kantor v. Wellesley Galleries, Inc.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  Residence is prima facie evidence of domicile.  *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994).  Citizenship is determined by the individual's domicile at the time that the lawsuit is filed.  *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986).

13.     Plaintiff brought her lawsuit against Follett in Los Angeles County

- 3 -

Superior Court.  (See, generally, Complaint.)  In that complaint, Brittany alleges that she "is a resident of California."  (Complaint, ¶ 10.)  Plaintiff was domiciled in California while she worked for Defendant at a Follett book store located in Claremont in Los Angeles County during the time period from December 2018 to October 3, 2022.  (Kyroudis Decl., ¶ 10.)  Plaintiff provided Defendant with her home address during the course of her employment for purposes of her personnel file, payroll checks, state payroll, and tax withholdings.  (Kyroudis Decl., ¶ 7.) Follett requires employees to keep their contact information current while they are employed.  (*Id*.)  Plaintiff's last known address on file with Follett is located in Claremont, in Los Angeles County, California.  (Kyroudis Decl., ¶ 10.)  Therefore, Plaintiff was at all relevant times, and still is, a citizen and resident of the State of California.

14.    Defendant's Citizenship.  For purposes of CAFA's minimal diversity requirement, an "unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized."  28 U.S.C. § 1332(d)(10); *Davis v. HSBC BankNev., N.A*., 557 F.3d 1026, 1032 n13 (9th Cir. 2009) ("For qualifying class actions such as this one, CAFA abrogates the traditional rule that an unincorporated association shares the citizenship of each of its members for diversity purposes.").

15.    A corporation's principal place of business for diversity purposes is normally "the place where the corporation maintains its headquarters."  *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1193 (2010).  In *Hertz*, the Supreme Court held that the "principal place of business" of a corporation is best interpreted as a corporation's "nerve center," which "ordinarily equates ... with a corporation's headquarters."  *Id*. The Court explained that "in practice [the nerve center] should normally be the place where the corporation maintains its headquarters - provided that the headquarters is the actual center of direction, control, and coordination ... and not

- 4 -

simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)." *Id*. at 1192-93; *see id*. at 1195 (distinguishing situation where alleged "nerve center" is "nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat").

16.     At all times since Plaintiff commenced this lawsuit, Defendant was, and is, a limited liability company formed under the laws of the State of Illinois with its principal place of business in the State of Illinois.  (Kyroudis Decl., ¶¶ 3-5.)

17.     Defendant has maintained its corporate headquarters in Westchester, Illinois.  (*Id.*)  Its corporate executives, including its senior leadership team, have been and continue to be located in Illinois, have maintained and continue to maintain their offices in Illinois, and have performed and continue to perform their primary duties and job functions in Illinois.  (*Id.*)  Follett's President, Chief Financial Officer, Chief Information Officer, senior leadership team, and many of its management personnel work in and maintain their principal offices in Westchester, Illinois.  (*Id.*)  These individuals direct, control, and coordinate the national operations of Follett  and make corporate decisions related to Follett's operations from Westchester, Illinois.  (*Id.*)

18.     Other operations and administrative support functions of Follett are directed, controlled, and coordinated at a national level by officers of Follett who are located in Westchester, Illinois, including finance and payroll, store operations, marketing, merchandising, buying, and human resources.  (*Id.*)  In addition, the administrative functions that are crucial to Follett's day-to-day operations are located in Westchester, Illinois.  (*Id.*)

19.     Because Defendant was formed under the laws of the State of Illinois, and maintains its principal place of business in the State of Illinois, it is not a citizen of the State of California.  (*Id.*)

20.     Therefore, for diversity of citizenship purposes, Follett is, and has been at all times since this action commenced, a citizen of the State of Illinois.  28 U.S.C. § 1332(c)(1).

21.     Accordingly, CAFA's diversity requirement is satisfied because at least one class member, Plaintiff, and Defendant are citizens of different states.

22.     <u>Doe Defendants</u>.  The presence of Doe defendants in this case has no bearing on diversity of citizenship for removal.  28 U.S.C. § 1441 (a) ("[f]or purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded"); *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition); *see Soliman v. Philip Morris, Inc.*, 311 F. 3d 966, 971 (9th Cir. 2002).  Thus, the existence of Doe defendants one through twenty does not deprive this Court of jurisdiction.

## SIZE OF CLASS AT LEAST 100

23.     CAFA requires that the aggregated number of members of all proposed classes in a complaint be at least 100.  *See* 28 U.S.C. § 1332(d)(5)(B).

24.     Since June 16, 2019, four years prior to the filing of the Complaint, to the present, Follett has employed at least 3,910 California-based non-exempt, hourly paid current and former employees.  (Kyroudis Decl., ¶ 12.)  Since December 18, 2018, the date that Plaintiff alleges the class period begins,[1] Follett has employed approximately 4,950 California-based non-exempt, hourly paid current and former employees (hereinafter referred to as "Putative Class Members").  (Kyroudis Decl., ¶ 11.)  Accordingly, the requirement that the proposed class members number at least 100 is satisfied.

/ / /

---

[1] Plaintiff claims an extended statute of limitations based on six months of tolling due to COVID-19.  Defendant bases its calculations on the allegations in the complaint, but under either date, Defendant has employed well over 100 nonexempt employees.

**AMOUNT IN CONTROVERSY**

25.     CAFA requires that the amount in controversy exceed $5,000,000, exclusive of interest and costs.  28 U.S.C. § 1332(d)(2).  Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000.  28 U.S.C. § 1332(d)(6).  In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Senate Judiciary Committee Report, S. Rep. No. 109-14, at 42 (2005), reprinted in 2005 U.S.C.C.A.N. 3, 40.  Moreover, the Senate Judiciary Committee's Report on the final version of CAFA makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction.  *Id*. at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purposed class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case .... Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions.  Its provision should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant").

26.     To establish that the amount in controversy exceeds the jurisdictional amount, the defendant must only make a plausible claim that the amount in controversy exceeds that amount.  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). Where, as here, Plaintiff does not plead a specific amount of damages, a defendant need only "plausibly show that it is reasonably possible that the potential liability exceed $5 million." *Greene v. Harley-Davidson*, 965 F.3d 767, 772 (9th Cir. 2020).  As the Ninth Circuit has explained, "the amount

in controversy is the 'amount at stake in the underlying litigation,'" which "does not mean likely or probable liability; rather, it refers to possible liability." *Id*. (quoting *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016) (emphasis omitted).

27.     Because Plaintiff has not alleged her particular damages, reasonable estimates of the alleged amount in controversy are appropriate. *See Ibarra v. Manheim Inv.'s, Inc*., 775 F.3d 1193, 1198 (9th Cir. 2015). Moreover, where a plaintiff alleges a "uniform policy and systematic scheme of wage abuse," without including "any modifying language to suggest less than uniform violations," courts have found that the amount in controversy can be satisfied by assuming a 100% violation rate. *Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. 2017); *Unutoa v. Interstate Hotels & Resorts, Inc*., 2015 WL 898512, at *2-3 (C.D. Cal. 2015) ("[r]emoving defendants will inevitably rely on some assumptions to support removal; a removing defendant is not required to go so far as to prove Plaintiff's case for him by proving the actual rates of violation").

28.     As the Supreme Court has explained, "the fact that the complaint discloses the existence of a valid defense to the claim" does not eliminate federal jurisdiction. *St. Paul Mercury Indem. Co. v. Red Cab Co*., 303 U.S. 283, 289-90 (1938). Further, Defendant's amount in controversy allegations on removal are entitled to the same weight given those alleged by a plaintiff in its pleadings. *Dart Cherokee Basin Operating Co*., 574 U.S. at 87-88. As a result, the effect of any affirmative defenses potentially reducing the amount in controversy cannot be considered when determining federal jurisdiction. *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010); *Scherer v. Equitable Life Assur. Soc*., 347 F.3d 394, 397-98 (2d Cir. 2003) (affirmative defenses may not be used to "whittle down the amount in controversy"); *Lara v. Trimac Transp. Servs. (Western), Inc*., No. CV 10-4280GHK (JCx), 2010 WL

3119366, at *3 (C.D. Cal. Aug. 6, 2010) ("[A]ffirmative defenses, counterclaims, and potential offsets may not be invoked to demonstrate the amount-in-controversy is actually less than the jurisdictional minimum").

29.    Moreover, a plaintiff cannot evade federal jurisdiction by merely alleging that the amount in controversy falls below the jurisdictional minimum. *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345, 1350 (2013); *Rodriguez v. AT&T Mobility Services LLC*, 728 F.3d 975, 978-82 (9th Cir. 2013).

30.    The alleged amount in controversy in this class action, in the aggregate, exceeds $5,000,000.  The Complaint seeks relief on behalf of "[a]ll California citizens currently or formerly employed by Defendants as nonexempt employees in the State of California at any time between December 20, 2018, and the date of class certification." (Complaint, ¶ 20.)  During the class period alleged in the Complaint, Follett employed approximately 4,950 non-exempt retail store employees in California.  (Kyroudis Decl., ¶ 11.)  The average hourly rate of pay for these individuals is approximately $12.12 per hour during the claimed class period.  (*Id*.)

31.    Plaintiff seeks to recover on behalf of the alleged class unpaid wages and penalties for Defendant's alleged failure to pay minimum and overtime wages, failure to provide meal and rest breaks, failure to reimburse necessary and reasonable business expenses, failure to provide accurate and complete itemized wage statements, failure to pay wages timely during employment, and unfair business practices.  (Complaint, ¶¶ 4-5, Prayer for Relief.)  Plaintiff further alleges that Defendant failed to timely pay Plaintiff and other putative class members who have separated from employment all minimum and overtime wages and all meal and rest period premiums allegedly owed to them upon separation.  (*Id*., ¶¶ 4-5, 34, 92-96.)  Plaintiff alleges that she and the separated employees in the putative class are entitled to "regular daily wages at their regular hourly rate of pay for each day

they were not paid, up to a maximum of thirty (30) days" under Labor Code section 203. (*Id.* ¶¶ 92-96)  Plaintiff seeks attorneys' fees on all causes of action. (*Id.* ¶¶ 42, 55, 79, 84, 89, 106, Prayer for Relief.)

32.    When the amount in controversy is not readily apparent from a complaint, "the court may consider facts in the removal petition" to determine the potential damages at issue. *Kroske v. US Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (quoting *Singer v. State Farm Mut. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).  Statutory penalties may be considered by the Court when determining the amount in controversy. *See Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 n3 (9th Cir. 2000).

33.    As set forth below, the amount in controversy implicated by the class-wide allegations exceeds $5,000,000.  All calculations supporting the amount in controversy are based on the Complaint's allegations, assuming, without any admission, the truth of the facts alleged and assuming liability is established.  When the amount in controversy is not apparent from the face of the complaint, a defendant may state underlying facts supporting its assertion that the amount in controversy exceeds the jurisdictional threshold. *Abrego*, 443 F.3d at 682-83.

34.    <u>Labor Code § 203</u>.  Labor Code section 203(a) provides that, "if an employer willfully fails to pay ... any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty" from the date such wages were due until the date paid.  Labor Code section 203(a) also provides that such wages "shall not continue for more than 30 days."

35.    Plaintiff claims that the alleged limitations period for potential claims under Labor Code section 203 would be from December 20, 2019, (three years before the Complaint was filed plus the time the statute of limitations was tolled due to COVID-19 from April 6, 2020 to October 1, 2020 pursuant to Cal. Rules of Court, Appendix I, Emergency Rule No. 9) to the present.

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

VP/#62180724.3

36.     Plaintiff alleges that she seeks to represent all former employees for claims of unpaid minimum and overtime wages. (Complaint at ¶¶ 20, 24(a)).  She also seeks to recover waiting time penalties under Labor Code section 203 for all former employees.  (*Id.* at 21.)  From December 20, 2019 to the present, there are approximately 2,453 former non-exempt, hourly paid employees who worked for Follett in California.  (Kyroudis Decl., ¶ 13.)  Many of these employees worked part-time, meaning less than 30 hours per week from December 18, 2018 through the present date.  (*Id.*, ¶ 9.)  Follett's non-exempt, hourly paid part-time employees in California worked shifts of varying lengths, from a full eight hour day, to shifts of four to six hours during this time period.  (*Id.*)

37.     Accordingly, assuming these employees worked just four hours per day, the alleged amount in controversy for just the claim for waiting time penalties would be $3,567,643.20 (2,453 employees x 4 hours per day x 30 days x $12.12 per hour).  Assuming these employees worked eight hours per day, as Plaintiff generally did during her employment with Defendant, the alleged amount in controversy for just the claim for waiting time penalties would be $7,135,264.40 (2,453 employees x 8 hours per day x 30 days x $12.12 per hour).  As Follett's non-exempt, hourly paid employees shifts varied between four to eight hours, the alleged amount in controversy for waiting time penalties alone is therefore between $3,567,643.20 and $7,135,264.40.

38.     Labor Code § 226(e).  The Complaint also alleges that Defendant failed to provide the putative class with accurate itemized wage statements, in violation of California Labor Code section 226.  (Complaint, ¶¶ 4, 33, 80-85.)  Labor Code section 226(e) provides a minimum of $50 for the initial violation as to each employee, and $100 for each further violation as to each employee, up to a maximum penalty of $4,000 per employee.  Lab. Code § 226(e).  The statute of limitations for recovery of penalties under Labor Code section 226 is one year.  Cal.

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

VP/#62180724.3

1    Civ. Proc. Code § 340(a).

2         39.    Follett pays its non-exempt employees in California every two weeks,

3    and has since December 18, 2018.  (Kyroudis Decl., ¶ 9.)  Accordingly, there are

4    approximately 26 pay periods per year.  (*Id.*)  Plaintiff alleges that Defendant

5    engaged in an unlawful "pattern, practice and uniform administration of corporate

6    policy regarding timely payment of wages."  (Complaint, ¶ 89.)  It is therefore

7    reasonable to assume Plaintiff claims all class members were underpaid at least

8    some wages or failed to be provided a meal or a rest break at least once per pay

9    period, and that Plaintiff seeks to recover a penalty under Labor Code section

10   226(e) for each wage statement provided to Defendant's employees for the entire

11   statutory period.  Plaintiff also alleges that "Plaintiff and Class Members are

12   entitled to recover … fifty dollars ($50.00) for the initial pay period in which a

13   violation occurred and one hundred dollars ($100.00) per employee for each

14   violation in subsequent pay periods in an amount not exceeding four thousand

15   dollars ($4,000.00) per employee."[2]  (Complaint, ¶ 84.)

16        40.    During the one year statute of limitations period for the wage

17   statement claim, 778 putative class members worked as many as 20,228 pay periods

18   (778 employees x 26 pay periods). (Kyroudis Decl., ¶ 14.)  Thus, the amount in

19   controversy on this claim could be as much as $1,011,400 ($50 for the initial pay

20   period x 20,228 initial pay periods).  As Follett's non-exempt hourly employees

21   worked part-time, even assuming the 778 putative class members worked only 13

22   pay periods per year each, the amount in controversy on this claim would equal

23   $505,700 ($50 for the initial pay period x 10,114 initial pay periods).

24        41.    Although Defendant denies Plaintiff's allegations, denies that she or

25   the putative class are entitled to any relief, and denies Plaintiff's calculation of

26   damages, based solely on the forgoing calculations for waiting time penalties and

27
28

---

[2] Again, Defendant accepts Plaintiff's allegations and calculation of damages based on her complaint solely for purposes of this removal.

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

VP/#62180724.3

wage statement penalties, the aggregate amount in controversy for the putative class, exclusive of attorneys' fees, is between $4,073,343.20 and $8,146,664.40. Accordingly, Plaintiff's claims for waiting time penalties and wage statements alone exceed the amount in controversy required under CAFA. When considering Plaintiff's claims for unpaid minimum wage compensation, unpaid overtime compensation, and unpaid meal and rest period compensation, the amount in controversy far exceeds the $5,000,000 threshold set forth under 28 U.S.C. § 1332(d)(2) for removal jurisdiction.

42.   <u>Labor Code § 204</u>.  Plaintiff also alleges that Follett violated California Labor Code section 204 by failing to pay current and former employees all wages owed "within a certain number of days of the close of the pay period." (Complaint, ¶¶ 87-90.)  Plaintiff does not specify how often this alleged violation supposedly occurred, but alleges that Follett engaged in an unlawful "pattern, practice and uniform administration of corporate policy regarding timely payment of wages," implying that it was a supposedly routine occurrence.  (*Id.* ¶ 89.) Plaintiff claims damages for herself and all putative class members for this alleged violation under Labor Code section 210, which provides that an employer may be subject to penalties for violations of California Labor Code section 204 at the rate of $100 for any initial violation for each employee and $200 for any subsequent or willful or intentional violation, plus 25% of the amount unlawfully withheld.  (*Id.* ¶¶ 87-90.)

43.   Accepting Plaintiff's allegations in the Complaint as true, and assuming that the putative class members each worked only three months (six pay periods) per year during the time period from December 20, 2018 to the present date) the collective amount in controversy for these alleged late wage payments is at least:  $2,970,000 [($100 x 6 pay periods) x 4,950 potential class members at any given time from December 20, 2018 to the present date].

- 13 -

44.  <u>Attorneys' Fees</u>.  Plaintiff also seeks attorneys' fees.  (Complaint, ¶¶ 42, 55, 79, 84, 89, 106, Prayer for Relief.)  A reasonable estimate of fees likely to be recovered may be used in calculating the amount in controversy.  *Longmire v. HMS Host USA, Inc.*, 2012 WL 5928485, at *9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over the amount in controversy under CAFA.") (citing *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002)); *Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504, at *4-5 (E.D. Cal. Apr. 30, 2007) (attorneys' fees appropriately included in determining amount in controversy).

45.  In the class action context, courts have found that 25 percent of the aggregate amount in controversy is a benchmark for attorneys' fees award under the "percentage of fund" calculation and courts may depart from this benchmark when warranted. *See Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (attorneys' fees are appropriately included in determining amount in controversy under CAFA); *see Powers v. Eichen*, 229 F.3d 1249, 1256-157 (9th Cir. 2000); *see Wren v. RGIS Inventory Specialists,* 2011 WL 1230826, at *27-29 (N.D. Cal. Apr. 1, 2011) (finding ample support for adjusting the 25% presumptive benchmark upward and found that plaintiffs' request for attorneys' fees in the amount of 42% of the total settlement payment was appropriate and reasonable in the case); *see also In re Quintas Securities Litigation*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (noting that in the class action settlement context the benchmark for setting attorneys' fees is 25 percent of the common fund).  Under the benchmark of 25 percent of the total recovery, attorneys' fees on the claim for waiting time penalties alone could be in the high six to low seven figure range.

46.  Because diversity of citizenship exists, and the amount in controversy exceeds $5,000,000, this Court has original jurisdiction of this action pursuant to 28

U.S.C. section 1332(d)(2). This action is therefore a proper one for removal to this Court pursuant to 28 U.S.C. section 1441(a).

47. To the extent that Plaintiff has alleged any other claims for relief in the Complaint over which this Court would not have original jurisdiction under 28 U.S.C. section 1332(d), the Court has supplemental jurisdiction over any such claims pursuant to 28 U.S.C. section 1367(a).

## VENUE AND INTRADISTRICT ASSIGNMENT

48. Venue lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. sections 1441, 1446(a) and 84(a). This action originally was brought in the Superior Court of the State of California, County of Los Angeles. As discussed above, Plaintiff Aarica Brittany is a resident of California residing in Los Angeles County. The County of Los Angeles is located within the jurisdiction of the United States District Court, Central District of California, Western Division.

49. In setting forth the calculations above, Follett does not admit that Plaintiff or any other person is owed any additional wages, compensation, premium pay, penalties or other damages, or that Follett is liable to Plaintiff or any other person in any amount or for any relief, including any attorneys' fees, or that there is even any proper class to be certified. To the contrary, Follett denies that it is liable to Plaintiff or to any other person in any amount and for any relief.

50. Based on the foregoing, all requirements under 28 U.S.C. § 1332(d) are satisfied and the State Court Action may be removed to this Court on the grounds of diversity of citizenship jurisdiction under CAFA.

51. By removing this action to this Court, Follett does not waive any defenses, objections or motions available to them under state or federal law.

## NOTICE OF REMOVAL

52. A true and correct copy of this Notice of Removal will be promptly

- 15 -

1  served on Plaintiff and filed with the Clerk of the Superior Court of the State of

2  California, County of Los Angeles.

3       WHEREFORE, Follett removes the above-entitled action now pending in the

4  Superior Court of the State of California for the County of Los Angeles to the

5  United States District Court for the Central District of California.

6

7  Dated: August 11, 2023         VEDDER PRICE (CA), LLP

8

9            By: *s/s Ashley D. Stein*

10           Sheryl Skibbe
          Ashley D. Stein
11           Lauren E. Wertheimer

12           Attorneys for Defendant
          FOLLETT HIGHER EDUCATION
13           GROUP, LLC (formerly known as
          Follett Higher Ed Group, Ltd.)

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 16 -

NOTICE OF REMOVAL & REMOVAL

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

VP/#62180724.3